## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**SHANNON MONTGOMERY**                                                    **PLAINTIFF**

**VS.**                               **No. 3:22-cv-00257 PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                        **DEFENDANT**

### ORDER

Plaintiff Shannon Montgomery ("Montgomery"), appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny his claim for Disability Insurance benefits ("DIB").

The lengthy history of this case began when Montgomery filed for DIB benefits in May 2013, alleging disability beginning November 20, 2012. A hearing was conducted in October 2014, followed by a January 2015 decision by the Administrative Law Judge ("ALJ") denying benefits. The Appeals Council denied Montgomery's request for review in January 2016.

Montgomery sought judicial review in this Court. The case was reversed and remanded in September 2016. The specifics of the remand were as follows:

> . . . although the ALJ noted in passing that consideration was given to Montgomery's prior work history . . . the Court is not persuaded that the

1

>ALJ gave it adequate consideration. . .  Upon remand, the ALJ shall re-assess Montgomery's residual functional capacity.  As a part of doing so, the ALJ shall send Montgomery for a consultative examination and shall re-evaluate his credibility as to his subjective complaints of pain.

(Tr. 537-538).

In April 2017, a second hearing was conducted before the same ALJ who issued the January 2015 decision.  In May 2017, this ALJ denied benefits, finding Montgomery could perform a limited range of light work.  (Tr. 483-504). Montgomery subsequently sought judicial review of this decision.  The defendant's unopposed motion to reverse and remand was granted by the Court in April 2018.  (Tr. 814).

A third hearing, before a different ALJ, occurred in June 2019.  The ALJ briefly questioned Montgomery, then explained that he would issue a decision after a consultative examination was performed.  (Tr. 730-737).  In January 2020, a supplemental hearing was held.  (Tr. 738-765).  Montgomery's claim was denied in February 2020, as the ALJ determined he could perform a limited range of light work. (Tr. 822-840).  In March 2021, the Appeals Council remanded the claim and directed the ALJ to obtain additional evidence from a medical expert, to further consider opinion evidence, to further consider his RFC, and to obtain additional testimony from a vocational expert.  (Tr. 845-851).

June 2021 brought another hearing before another ALJ.  (Tr. 766-878).  That

ALJ denied the claim in January 2022, and the Appeals Council denied the claim in August 2022. (Tr. 697-723, 691-696). Montgomery now appeals the final decision rendered in January 2022. In the final decision, the ALJ determined Montgomery had the severe impairments of degenerative disc disease of the cervical and lumbar spine, as well as the following non-severe medical impairments: Chiari malformation, carpal tunnel syndrome, right-ear hearing loss, knee pain, obesity, left shoulder impingement, and anxiety. (Tr. 703). The ALJ found Montgomery had the RFC to perform light work with the following exceptions: he can continuously lift and carry 10 pounds, 20 pounds occasionally; sit, stand, and walk for 2 hours; can sit 8 hours and be ambulatory for 4-6 hours; occasionally climb stairs, climb ladders, balance, and stoop; occasionally be around unprotected heights, mechanical parts, and extreme cold or heat; and can frequently drive but should not work around vibrations. The ALJ thoroughly reviewed the medical evidence and the opinion evidence. Relying upon the testimony of a vocational expert, the ALJ concluded there were sedentary jobs which Montgomery could perform, such as the jobs of assembler and inspector. Accordingly, the ALJ found Montgomery was not disabled. (Tr. 697-723).

Montgomery contends the ALJ erred: (1) by failing to comply with the Court's September 2016 remand order by neglecting to send him for a consultative examination and failing to adequately assess his work history; (2) by wrongly

crediting the October 2021 opinion of Dr. Fuchs, a nonexamining physician; and (3) by failing to properly assess his subjective complaints.  The relevant period under consideration is from November 20, 2012, the alleged onset date, through December 31, 2017, the date last insured.

*Claim One – failure to comply with the Court's September 2016 remand order by neglecting to send him for a consultative examination and failure to adequately assess his work history*

Regarding the failure to send Montgomery for a consultative examination, the history of the case is critical.  The September 2016 remand order of the Court was clear and the ALJ at the time failed to comply with the Court's directives when he conducted the April 2017 hearing.  The ALJ, both at the April 2017 hearing and in his May 2017 decision, disregarded the Court's directions.[1]  However, Montgomery's case did not conclude with the May 2017 decision.  The ruling now before the Court is the January 2022 decision, and the intervening proceedings demonstrate that a subsequent ALJ sent Montgomery for a June 2019 consultative examination with Dr.

---

[1]

At the hearing the ALJ stated the Court "can't tell us how to, what to do with the case on remand so . . . it's [obtaining a consultative examination] discretionary as far as we're concerned."  (Tr. 511).  In his decision, the ALJ acknowledged the Court had directed Montgomery be sent for a consultative examination but "the undersigned Administrative Law Judge concludes that a consultative examination is not necessary; thus, one was not ordered." (Tr. 486).

Samuel Meredith ("Meredith").  So, there is no merit to the claim that a consultative examination was ordered but not performed.

Montgomery also contends that Meredith's examination was defective because it did not include a specific opinion on his work-related limitations.  A review of Meredith's report shows Montgomery was judged to have abnormal range of motion in his cervical spine and in his lumbar spine.[2]  Meredith summarized his findings, noting Montgomery's "perceived disability" to include an inability to walk a block and stiffness in his neck if he drives for 30 minutes.  (Tr. 1326).  Meredith also recorded Montgomery to have 3out of 5 strength throughout his left upper extremity, subdued reflexes in the left upper extremity, no deformity in the low back but restricted range of motion, and normal range of hip motion, reflexes, motor tone, and gait.  Meredith listed three impressions:

1. Chronic nonradicular degenerative low back secondary to discopathy and facet arthropathy.

2. Post surgical degenerative disc disease cervical spine.

---

[2]

Normal flexion of the cervical spine is 50 degrees and normal extension is 60 degrees – Meredith rated Montgomery at 45 and 50 degrees, respectively, and also rated him at 55 degrees on spine rotation on his left side, with 80 degrees being normal.  Normal lumbar flexion is 80 degrees and normal extension is 25 degrees – Meredith rated Montgomery at 80 and 15 degrees, respectively.  Montgomery was also found to have 20 and 15 degrees range of lateral flexion on his right and left side, both of which were lower than normal lateral flexion of 25 degrees.  (Tr. 1324).

3.      History of herniated probably extruded disc with diffuse left upper

extremity weakness.

(Tr. 1326-1327).

Montgomery faults the Meredith report for failing to opine about his work-related limitations.  This, according to Montgomery, violated the remand instructions from the Court.  The Court disagrees.  The remand directions were "the ALJ shall re-assess Montgomery's residual functional capacity" and "[a]s a part of doing so, the ALJ shall send Montgomery for a consultative examination."  Montgomery reads the remand instructions too broadly, assuming the consultative examiner was required to render an opinion on his work-related limitations.  This was not required.  The consultative examination was performed to provide the ALJ with information to assist in re-assessing Montgomery's RFC.  The ALJ, not the consultative examiner, was tasked with determining Montgomery's RFC.  Noting that the examination came a year and a half after the date last insured, the ALJ nevertheless considered Meredith's report in reaching his RFC conclusion.  Meredith's  report  was slow in materializing due to the initial ALJ's refusal to abide by the Court's Order, but there is no error in its form or in the ALJ's treatment of the report.

Montgomery also points to the 2016 remand instructions, claiming the ALJ failed to properly consider his work history in assessing his subjective allegations.

6

Montgomery alleges the ALJ *never mentioned* his work record in the 2022 decision. Doc. No. 13, page 36 (emphasis in original). While there is not a detailed analysis of the work record, the ALJ did discuss Montgomery's work. For example, when considering Montgomery's severe impairments the ALJ noted that symptoms were present in 2007 and "he had been able to work as a police officer." (Tr. 703). Montgomery's past relevant work was identified as a police officer. (Tr. 712). The ALJ also considered Montgomery's "work experience" when analyzing whether other jobs were available to him. (Tr. 712-713). The ALJ thoroughly reviewed Montgomery's subjective complaints, ultimately finding his statements were "not entirely consistent with the medical evidence" and further citing daily activities which tended to discredit the allegations of severe, constant, and disabling symptoms. (Tr. 709). The ALJ's analysis of Montgomery's subjective statements was not erroneous and did not violate the Court's 2016 remand order.

*Claim Two – the ALJ wrongly credited the October 2021 opinion of Dr. Fuchs, a nonexamining physician*

Responding to the Appeals Counsel Order of March 2021, the ALJ sent interrogatories to Dr. Louis Fuchs ("Fuchs"). After a review of the medical records, Fuchs opined Montgomery had chronic cervical and lumbar-sacral myofascitis, conditions which did not meet any Listing. Fuchs opined Montgomery had no limits

on activities of daily living, did not require a cane, had no limits regarding upper/lower limbs, and could frequently drive. Fuchs found Montgomery was otherwise limited to lifting and carrying 10 pounds, occasionally 20, sitting, standing, and walking 2 hours, sitting 8 hours, ambulating 4-6 hours, and occasionally climbing stairs, balancing, stooping, using ladders, and being around unprotected heights, mechanical parts, and extreme cold and heat.

The ALJ, in his recitation of the medical record, summarized Fuchs' findings. When addressing the opinion evidence, the ALJ wrote:

> Dr. Fuchs' medical opinion (detailed above) is given some weight. Dr. Fuch's [sic] opinion is supported by his trained review and impartial analysis of the evidentiary evidence of record, and a well-reasoned conclusion. His opinion is based on a thorough review of the records, it is within his area of expertise, and is consistent with the other evidence of record. The reason the opinion is only given some weight is that it was rendered in 2021, which is almost four years after the claimant's DLI had expired.

(Tr. 711).

Montgomery challenges the treatment of Fuchs report in four ways.

First, Montgomery contends Fuchs never actually examined Montgomery, and instead only reviewed some of the medical records. There is no debate whether Montgomery was physically examined by Fuchs – he was not. The ALJ's request was for Fuchs to review the evidence and complete the interrogatories. (Tr. 725). A physical examination was not contemplated.

8

Montgomery argues that it is unclear what medical records were provided to Fuchs. As a result, Montgomery urges any opinions of Fuchs should be discounted. Montgomery, however, does not demonstrate that Fuchs was reviewing only a portion of the records. At the July 2021 administrative hearing, the ALJ informed Montgomery's attorney that he would be submitting interrogatories to a medical expert, prompting this query to the ALJ: "Will he [Fuchs] review all of the medical records in the file?" The ALJ responded, "Yes, he'll . . . get a copy of the file." (Tr. 785). The fact that Fuchs cited only five medical exhibits does not mean that he was provided with less than the entire medical record. Montgomery simply does not establish that Fuchs reviewed only part of the record.

Second, Montgomery faults Fuchs' report for failing to indicate what time period is covered by the opinion. The request for medical interrogatory sent to Fuchs indicated the alleged onset date was November 20, 2012, and the relevant period was November 20, 2012 through December 31, 2017. (Tr. 726). This form was executed by Fuchs. (Tr. 1330). And one of the interrogatories asked if there was sufficient objective medical and other evidence to allow Fuchs to form opinions about Montgomery's impairments "during the relevant time period?" Fuchs answered "yes" to this question. (Tr. 1330). While Montgomery is correct that Fuchs cited two medical exhibits from 2018 and 2019, after the relevant period, it does not follow that

his opinions should be given no weight.  The medical evidence after December 31, 2017, may not be as relevant as before that date, but it nevertheless may shed some light on impairments during the relevant time frame.  There is no merit to the claim that Fuchs failed to indicate the time period tied to his report.

Third, Montgomery claims Fuchs pointed to no specific medical evidence nor did he provide any supporting explanations for his opinion about limitations. Interrogatory 6 directed Fuchs to specify Montgomery's impairments and to cite the objective medical findings supporting his opinion, "with specific references (exhibit or page number)."  (Tr. 1330).  In response, Fuchs cited exhibits 20F - page 1, 21F - page 15, 22F, 30F - pages 7 & 17, and 31F - page 7.  While Montgomery may have preferred more citations and explanations, Fuchs did offer references to support his opinions.[3]

For his fourth and final challenge to Fuchs' opinions Montgomery asserts the other medical evidence in the record is inconsistent with Fuchs' views.  Montgomery correctly notes that one of Fuchs' findings was inconsistent with the other medical evidence.  Fuchs opined Montgomery suffered from "chronic cervical, lumbar-sacral

---

[3]
As part of this argument Montgomery alleges Fuchs' citation to Exhibit 20F was "obviously" wrong because this record is of an emergency room visit for a lacerated toe.  Doc. No. 13, page 41.  These records reflect a normal range of motion in Montgomery's neck, and indicate his toe was lacerated while he was walking in the river, which are factors relevant to activities of daily living.

myofascitis." (Tr. 1330). Fuch's myofascitis diagnosis attributes the limitations to muscular issues, while the other medical providers consistently diagnose Montgomery with degenerative disease and arthritis. Imaging results support the degenerative nature of Montgomery's ailments. While this divergence on diagnosis is notable, it is not dispositive for three reasons. First, a difference in diagnosis does not necessarily negate Fuchs' findings of Montgomery's limitations. Second, the ALJ afforded Fuchs' opinion only "some weight." (Tr. 711). Third, the ALJ ultimately determined Montgomery could not perform his past relevant work but could perform the jobs of assembler and inspector, both of which assume some work-related limitations.

The ALJ at the most recent hearing had no doubt that Montgomery could not have continued to be a police officer during the relevant period. (Tr. 786). But the ALJ determined Montgomery could have performed other jobs. Montgomery worked as a police officer until 2012 after his neck surgery in 2007. Imaging results from 2012, 2014, and 2015 reflected degenerative changes and some bulging discs but did not suggest Montgomery was unable to perform any work. (Tr. 327, 472-475). The 2014 report showed the changes at C-5 and C-6 had "progressed slightly" since 2012. (Tr. 471). Further, an August 2012 EMG was normal, except for showing mild carpal tunnel syndrome of both wrists. Specifically, there was "no active denervation or

chronic reinnervation sign from the cervical or lumbar roots on the EMG needle exam." (Tr. 687).  The ALJ's citation to these medical findings was appropriate.

In summary, substantial evidence supports the determinations reached by the ALJ.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Montgomery's complaint is dismissed with prejudice.

IT IS SO ORDERED this 4th day of October, 2023.

_____
UNITED STATES MAGISTRATE JUDGE